## PACIFIC FIRE INS. CO. v. DUNMIRE et al.
### Clv. No. 10347.

United States District Court,
W. D. Pennsylvania.

Sept. 29, 1952.

Kenneth P. Christman, Pittsburgh, Pa., for plaintiff.

W. Davis Graham, Kittanning, Pa., for defendants.

STEWART, District Judge.

Plaintiff brought this action to recover premiums alleged to be due and owing to it under a provisional fire insurance policy with defendants. Prior to answering the complaint, defendants filed motions for a more definite statement of claim and to dismiss the complaint.

Both motions relate to the sufficiency of the complaint and will be considered together. The function of a complaint under the Federal Rules of Civil Procedure, 28 U.S.C., is to afford fair notice to the adversary of the nature and basis of the claim asserted and to furnish a general statement of the type of litigation confronting the defendants. Continental Collieries, Inc., v. Shober, 3 Cir., 1942, 130 F.2d 631; American Ship Building Co. v. Kirk, D.C.W.D.Pa.1951, 11 F.R. D. 366. A complaint which performs these functions is sufficient except where, as provided in Rule 12(e), the pleading "is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading * * *". American Ship Building Co. v. Kirk, supra.

Rule 8(a) (2) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief". Rule 12(b) (6) provides that a defense may take the form of a motion to dismiss where the complaint fails to "state a claim upon which relief

can be granted".[1] Consequently, the question for our determination on defendants' motions to dismiss and for a more definite statement is whether the complaint contains a statement of a claim upon which relief can be granted in sufficiently clear terms to enable the defendants to frame a responsive pleading. United States Guarantee Co. v. Mountaineer Engineering Co., Inc., D.C.W.D.Pa.1952, 12 F.R.D. 520. In our opinion, the complaint in this case meets this test.

■ The facts as they appear from the complaint and the exhibits attached thereto are as follows: A fire insurance policy was issued by plaintiff to the Dunmire Associated Companies for a period of three years. This policy was a type known as a provisional policy and is used to give flexible protection in circumstances where the amount and value of the insured's property, normally stock-in-trade, is subject to fluctuation; and, in this case, was drawn to cover defendants' stock-in-trade in 17 different mercantile establishments. The provision in the policy which sets forth this plan of fluctuating coverage and premiums is as follows:

"Amount and Premium Calculations — The amount of this policy and the premium charged hereunder are provisional only—the actual amount of insurance and the premium charges therefor shall be calculated as follows. At the expiration of each twelve month period that this policy has been in force the monthly valuations reported during the preceding twelve months shall be averaged and the amount so ascertained shall be considered to be the actual amount of insurance in force throughout said term. The actual premium shall be computed upon such actual amount at the rate named in this policy. Any differences shall be adjusted i. e.—if the actual premium is greater than the provisional premium charged for the twelve-month period an additional premium equal to the difference shall be due the Underwriters. If less, a return premium equal to the difference shall be due the Insured."

■ It is this provision with which we are concerned at this time. Defendants' contention seems to be that the premium may not continue to fluctuate beyond the limits of coverage. We are in accord with defendants' counsel with respect to his general proposition. Where, as here, the amount of premium is based on the amount of coverage or extent of risk in a definite and specific proportion, that premium should not continue to increase after the risk assumed by the insurer has leveled off at the limits of the policy in the absence of a specific provision to the contrary. However, the premium, under a provision, similar to that quoted above, will increase proportionately at least so long as the risk increases within its limits. In this respect, the provision quoted is clear and unambiguous when it provides that

"At the expiration of each twelve month period that this policy has been in force the monthly valuations reported during the preceding twelve months shall be averaged and the amount so ascertained shall be considered to be the *actual amount of insurance in force* throughout said term. *The actual premium shall be computed upon such actual amount at the rate named in this policy.*" (Emphasis added.)

It is axiomatic that when a contract is clear and unambiguous, it will be applied and enforced in accordance with its clear meaning. Provident Trust Co. of Philadelphia v. Metropolitan Casualty Ins. Co., 3 Cir., 1945, 152 F.2d 875; Shipley v. Pittsburgh & L. E. R. Co., D.C.W.D.Pa.1949, 83 F.Supp. 722; General Finance Co. v. Pennsylvania Threshermen & Farmers' Mutual Casualty Ins. Co., 1944, 348 Pa. 358, 35 A.2d 409.

1. Here we should note that although defendants' motion to dismiss as filed raises only a jurisdictional question, the whole import of the oral argument and brief submitted to us on their behalf relates to this basis.

The policy as originally written on July 1, 1947, was based on a total provisional amount of $700,000 and carried a provisional amount of $350,000 which covered its pro rata proportion of 50% of the total provisional amount. Subsequently, on July 28, 1947, retroactive to July 1, 1947, the policy was amended so as to be based on a total provisional amount of $600,000 with the pro rata coverage increased to 60% or a provisional coverage in the amount of $360,000. The total premium rate for the 3-year period was 2.65% and this was prorated over the 3-year period. For example, the total deposit premium was determined as follows:

$600,000 (total provisional coverage) $\times$ .0265 (premium rate) $\times$ .60 (pro rata coverage) = $9,540.

By pro-rating this over the 3-year term of the policy, we find that the premium allotted to each year is $3,180. This figure represents the basic premium from which the fluctuations in premium were to be added or subtracted in accordance with the above quoted provision of the policy.

Although defendants' position in this regard is not entirely clear, it seems to resolve itself into the proposition that the total provisional amount represents the limit of the policy coverage and that, consequently, a premium based thereon in the proportionate policy rate represented the maximum premium that could legally be charged under the contract, concluding that it had paid this amount and, consequently, owed nothing further. It is apparently on this basis that the motion to dismiss is made. We do not agree with defendants' position. The total provisional amount does not represent a limit on the policy. The provision quoted makes this clear when it provides that "The actual premium shall be computed upon such actual amount at the rate named in this policy. Any differences shall be adjusted i. e.—if the actual premium is greater than the provisional premium charged for the twelve-month period an additional premium equal to the difference shall be due the Underwriters. If less, a return premium equal to the difference shall be due the Insured."

Since the basic premium under the policy is based on the total provisional amount, the portion of the above provision which provides for the payment of an additional premium would have been superfluous if we accepted defendants' construction since, under that construction, the basic premium would also represent the maximum. We think this clearly illustrates that the parties intended that the total provisional amount represent an estimated average inventory rather than a limit on coverage.

Of course, there are limits specifically set forth in the policy, which as amended, are as follows:

"$25,000 at Apollo, Pennsylvania, in or on premises of the Apollo Milling Company.

"$90,000 at any other location covered at the inception date of the insurance.

"$50,000 at any other location acquired after the inception date of this insurance."

Since 17 separate mercantile locations were covered by the policy at the inception date, the total limit under this provision would be $25,000 + 16 $\times$ (90,000) or a total of $1,465,000. This does not include any subsequently acquired locations which would increase this total limit at the rate of $50,000 per location. Under the terms of the policy and in accordance with the proposition asserted by defendants that premium and coverage must maintain a definite relationship, we think that there was a maximum premium which could legally be collected under this policy. When the coverage reached a limit, so must the premium. In our view, the maximum premium under this policy was

.0265 (rate) $\times$ $1,465,000 (limit of coverage) $\times$ .60 (pro rata share) $\div$ 3 (no. of years policy in force) = $7,764.50.

This would increase as new locations were added. By deducting $3,180, the basic premium, from this, the maximum additional premium that could be assessed each year can be determined and is in an amount of $4,584.50.

However, the decision in this case does not depend on this determination since the average inventory reported was well below the limit of the policy making defendant's proposition inapplicable or unnecessary to a decision of the matter. We conclude, therefore, that plaintiff could assess an additional amount, under the policy, when the average inventory was valued in excess of $600,000, at least so long as this amount was under the maximum coverage limit of the policy. Plaintiff has, therefore, stated a claim upon which relief can be granted if and when the allegations of the complaint are proved by it and this statement is sufficiently clear to enable the defendants to frame a responsive pleading. It should be noted also that, according to the allegations of the complaint, premium adjustments were made at the end of the first and second years in accordance with the terms of the policy and the additional premiums were paid by defendants, but they refused to do so at the end of the third year, and it is this amount which plaintiff here seeks to recover.

In addition, plaintiff seeks to recover a premium for an extension of coverage for a portion of a year following the termination of the policy. We think it evident that this count also represents a claim upon which relief can be granted if and when the allegations are proved and this statement is also sufficiently clear to enable defendants to frame a responsive pleading.

Therefore, defendants' motion will be denied.