Stanley J. SOCHANSKI

v.

**SEARS, ROEBUCK & COMPANY and The Goodyear Tire & Rubber Co.**

Civ. A. No. 75–2903.

United States District Court, E. D. Pennsylvania.

Oct. 22, 1980.

See also D.C., 504 F.Supp. 187.

August J. Lacko, Barry S. Lyons, Philadelphia, Pa., for plaintiff.

John J. O'Brien, Jr., Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

HANNUM, District Judge.

Presently before the Court is a Motion For Judgment N.O.V. pursuant to Rule 50(b), F.R.Civ.P., filed by defendant, Sears, Roebuck and Company (hereinafter "Sears"). After careful consideration of the issues presented by the defendant's motion, the Court has determined that the motion will be denied.

Plaintiff, Stanley Sochanski, was injured when a tire he was repairing exploded. The tire was manufactured and then sold by Goodyear Tire & Rubber Company (hereinafter "Goodyear"). After being mounted on a wheel which was manufactured and sold by Geneva Metal Wheels Company, the wheel unit was incorporated into a garden cart and eventually sold by Sears. The tire was subsequently brought to the Palmer Tire Company, employer of plaintiff, for repair, where it exploded and injured plaintiff. Plaintiff then instituted the present

action against Sears and Goodyear[1] to recover for injuries he sustained from the explosion.

After a trial on the merits, the case was submitted to the jury on the theory of strict liability under Section 402A of the Restatement (Second) of Torts (1965). The jury answered special interrogatories,[2] which resulted in the Court directing a verdict for the plaintiff. The jury awarded $395,000 in damages. Both defendants, Sears and Goodyear, filed motions for judgment n. o. v., which were granted. Plaintiff appealed the decision and the Third Circuit Court of Appeals reversed and remanded the case so that the jury verdict could be reinstated.[3]

The present dispute arises from an interim development. During the pendency of the appeal, Plaintiff entered into a Joint Tortfeasor Release with defendant, Goodyear, for $100,000. Defendant Sears now comes before the Court contending that Plaintiff's settlement agreement with Goodyear released Sears from liability. The reasoning behind Sears' contention is presented as follows: Sears and Goodyear are not joint tortfeasors; in effect, the opinion of the Court of Appeals[4] declares that Goodyear is primarily liable; Sears is only secondarily liable because the tire was defective from the time of manufacture, and no proof of any independent negligence on the part of Sears was presented; since the release of a party primarily liable, thereby, releases a party secondarily liable, *Builders Supply Co. v. McCabe*, 366 Pa. 322, 77 A.2d 368 (1951), Sears contends it is entitled to indemnity from Goodyear. See *Burbage v. Boiler Engineering & Supply Co.*, 433 Pa. 319, 249 A.2d 563 (1969); *Tromza v. Tecumseh Products Co.*, 378 F.2d 601 (3d Cir. 1967).

In reply, Plaintiff argues that the trial proceeded on the malfunction theory which does not require proof of a specific defect. In fact, no specific defect was shown as the Court of Appeals in its opinion recognized. *Sochanski v. Sears*, 621 F.2d 67, 69–71 (3d Cir. 1980). The jury determined that both the tire and the wheel unit were defective.

1. Sears had originally joined Geneva Metal Wheels Company as a third party defendant. During the course of the trial, Sears' complaint against Geneva Metal Wheels Company was withdrawn pursuant to F.R.Civ.P. 41(a)(1)(ii). Likewise, Palmer Tire Company was removed from the case by both Sears and Goodyear at trial. The manufacturer of the wheel unit was never identified or named party to the Complaint. At the close of all evidence Sears withdrew its claim against Goodyear. Brief for Plaintiff at 2.

2. The pertinent interrogatories are numbers one through six which were answered by the jury as follows:
    1. Was Plaintiff's Exhibit No. 1 in a defective condition when it was sold by Defendant Goodyear?
    Yes or No.
    The Foreman: Yes.
    2. Did the defect in Plaintiff's Exhibit No. 1 render it unreasonably dangerous to the plaintiff?
    Yes or No.
    The Foreman: Yes.
    3. Was the defect in Plaintiff's Exhibit No. 1 a proximate cause of the accident?
    Yes or No.
    The Foreman: Yes.
    4. Was the wheel unit, that is, Plaintiff's Exhibit No. 1, mounted on Plaintiff's Exhibit No. 3 in a defective condition when sold by Defendant Sears?

Yes or No.
    The Foreman: Yes.
    5. Did the defect render the wheel unit unreasonably dangerous to the plaintiff?
    Yes or No.
    The Foreman: Yes.
    6. Was the defect a proximate cause of the accident?
    Yes or No.
    The Foreman: Yes.

3. The Court of Appeals for the Third Circuit reversed the District Court's determination that the Plaintiff had failed to meet the requisite burden of proof by insufficiently negating abnormal use or secondary causes. The case had been presented under a "malfunction" theory, under which the plaintiff is not required to prove the existence of a specific defect, if he can show the product malfunctioned in the absence of abnormal use and reasonable secondary causes. See, *Knight v. Otis Elevator Co.*, 596 F.2d 84, 89 (3d Cir. 1979).

4. The Court of Appeals for the Third Circuit made note of this interesting development but offered no comment about its effect on Sears stating that none of the parties had presented the issue to the Court.
    Geneva Wheel Company was also a party to the Release.

Plaintiff contends absent a showing of a specific defect, a determination of primary as distinguished from secondary liability cannot be had. It was Sears' burden to go forward and prove actual fault solely on the part of Goodyear; Sears failed in meeting this burden and thus, Sears is equally liable.

██ Under the common law of Pennsylvania, the release of one joint tortfeasor automatically discharged the other. *Hiberth v. Roth*, 395 Pa. 270, 149 A.2d 648 (1959). *See also George v. Brehm*, 246 F.Supp. 242 (W.D.Pa.1965). The Uniform Contribution Among Tortfeasors Act, 42 Pa.C.S.A. §§ 8321–27, [hereinafter "Act"] altered the law to the contrary so that the release by the injured party of one jointly liable no longer releases others also liable unless the release expressly so provides. However, the Act applies only to joint or several tortfeasors, provided they are all primarily liable or all secondarily liable. Where the relationship between tortfeasors is one of primary and secondary liability, the Act is inapplicable and hence, common law principles are controlling. *George, supra* at 246. *See also Brown v. Pittsburgh*, 409 Pa. 357, 186 A.2d 399 (1962); *Largent v. Means*, 121 P.L.J. 324 (Pa.C.P.1973).

In light of the foregoing principles, the threshold issue to be determined by the Court is whether the relationship between Sears and Goodyear is one of joint or several liability or that of primary and secondary liability. The issue is one of first impression for the Court because the Court is being asked to decide whether the release of one defendant found liable under the malfunction theory, *see* note 3 *supra*, releases the other defendant likewise found liable under the same theory.

██ It has always been the law in Pennsylvania that the right of indemnity "enures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable." *Burbage v. Boiler Engineering & Supply Co.*, 433 Pa. 319, 326, 249 A.2d 563, 567 (1969), *citing Builders Supply Co. v. McCabe*, 366 Pa. 322, 77 A.2d 368 (1951). Secondary as contrasted against primary liability "rests upon a fault that is imputed or constructive only, being based on some legal obligation between the parties or arising from some positive rule of statutory or common law." *Burbage*, 433 Pa. at 327, 249 A.2d at 567.

██ Applying this standard to Sears' motion, Sears is not secondarily liable and thereby entitled to indemnity from Goodyear. In order for Sears to be secondarily liable, its fault must be "imputed or constructive" only. Here, Sears' fault cannot be characterized in such a manner. Both Sears and Goodyear were found to be strictly liable under Section 402A and under the malfunction theory. The malfunction theory does not require a showing by the Plaintiff of a specific defect, but only a showing that the product malfunctioned in some way. *Knight v. Otis Elevator Co.*, 596 F.2d 84, 89 (3d Cir. 1979). *See also* note 3 *supra*. In light of the fact that a specific defect was not shown, primary liability cannot be assigned to Goodyear. Both Goodyear and Sears are equally liable. The jury found, in response to special interrogatories, that the tire was defective when sold by Goodyear and the wheel unit was defective when sold by Sears. *See* note 2 *supra*. *See also Sochanski v. Sears*, 621 F.2d 67, 68 (3d Cir. 1980). It is not for the Court to speculate at this juncture when and where the defect originated. Once the Plaintiff had proven the existence of a "malfunction," the burden then shifted to Sears, as the party seeking indemnification to demonstrate that its liability was imputed by law only. *Muth v. Dechert, Price & Rhoads*, 391 F.Supp. 935, 939 (E.D.Pa.1976).[5] Sears, however, declined to meet this burden. In

---

5. *Muth* involved a shareholder suit under the federal securities law. The Court in *Muth* stated that "[t]o obtain indemnity, an unsuccessful defendant must show that the proposed indemnitor is significantly more responsible than he for the injuries to the plaintiffs." *Muth v. Dechert, Price & Rhoads*, 391 F.Supp. at 939. This principle is applicable to the situation at bar.

fact, Sears prevented any determination whether the defect in the tire was the cause of the explosion by withdrawing its cross-claim against Goodyear at the close of evidence.

The time to contest a status or designation as joint tortfeasors has long since passed. Implicit by the position of the parties, the jury's view and the fact that the crossclaims were brought and dismissed, Sears' conduct rises to a waiver of this assertion. Although the procedural tools now used are significantly different, what is actually being requested is a judicial determination of the division or status of liability. This could have been postured at trial for resolution. To attempt to posture it now, long after the jury has been dismissed and near the final stages of the case would be patently unfair. The theory of waiver would appear suited for application to the factual circumstances presented in this case. The question of waiver in federal cases is governed by the federal standard enunciated in *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) (intentional relinquishment or abandonment of a known right or privilege).

In support of its motion, Sears cites *Burbage v. Boiler Engineering & Supply Co., Inc.*, 433 Pa. 319, 249 A.2d 563 (1969) and *Tromza v. Tecumseh Products Co.*, 378 F.2d 601 (3d Cir. 1967). However, both these decisions are readily distinguishable from the case at bar. *Burbage* involved a boiler manufacturer who was held to be entitled to indemnity from the manufacturer of a defective valve sold as a replacement part for a boiler already in operation, on the basis that the responsibility for discovery of the defect lay solely with the valve manufacturer. Similar to the present case, the issue of liability in *Burbage* was submitted to the jury under Section 402A. However, the similarity ends at this point. *Burbage* is distinguishable in that the case had not been submitted to the jury under the malfunction theory. In *Burbage*, a specific defect was alleged and proven through expert testimony. There was no doubt that the defective valve and the defective valve alone caused the explosion. In addition, it was the defendant Boiler Engineering & Supply Co., Inc. [hereinafter "Boiler"] which joined the valve manufacturer as an additional defendant on the alternative theories that the valve manufacturer was jointly or severally liable or that the valve manufacturer was liable by way of an indemnity to Boiler. The jury returned a verdict against Boiler and in favor of Burbage and in favor of Boiler against the valve manufacturer for indemnification. No such determination was reached in the present case. The issue of indemnification in the present case as stated earlier was never submitted to either the jury or the court. The jury however did determine that both Sears and Goodyear were strictly liable.

The decision of the United States Court of Appeals for the Third Circuit in *Tromza v. Tecumseh Products Co.*, 378 F.2d 601 (3d Cir. 1967) is likewise cited by Sears. In *Tromza*, the Court found a manufacturer of a defective compressor unit who failed to detect the defect by proper inspection primarily liable for injuries that occurred when the unit exploded. The party who had incorporated the unit into the refrigerator which was then sold was determined to be only secondarily liable since its liability only arose because of its failure to discover the defect. Again, a specific defect was demonstrated that was attributable to the manufacturer of the compressor unit.

The Court finds that the relationship between Sears and Goodyear is one of joint or several liability. Accordingly, the Uniform Contribution Among Joint Tortfeasors Act, *supra*, is applicable. Inasmuch as the release executed between the Plaintiff and Goodyear did not specifically provide for the release of Sears, Sears remains liable to the Plaintiff. The Defendant Sears' motion will be denied.

An appropriate Order will be entered.